GailAnn Y. Stargardter (SBN 250749)
    gstargardter@mvjllp.com
MOKRI VANIS & JONES, LLP
4100 Newport Place, Suite 840
Newport Beach, California 92660
Telephone:  949.226.7040
Facsimile:   949.226.7150

Attorneys for Plaintiff
ATAIN SPECIALTY INSURANCE
COMPANY

## UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| ATAIN SPECIALTY INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> LAKE LINDERO HOMEOWNERS ASSOCIATION; GOLF PROJECTS LINDERO, INC., a California corporation; LORDON ENTERPRISES, INC., a California corporation, dba LORDON MANAGEMENT, <br><br> Defendants. | Case No. 2:19-cv-09824 DSF (MRWx) <br><br> **NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** <br><br> [*filed concurrently with Separate Statement of Uncontroverted Facts; Request for Judicial Notice; the Declaration of Sally E. Rock; Jessalynn H. Suda; and GailAnn Y. Stargardter and Exhibits attached thereto and [Proposed] Order*] <br><br> DATE:        November 23, 2020 <br> TIME:        1:30 p.m. <br> CRTRM:    7D <br> JUDGE:     Hon. Dale S. Fischer |

## <u>NOTICE OF MOTION AND MOTION</u>

TO THE COURT, ALL INTERESTED PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on **November 23, 2020**, at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 7D, of the above-entitled Court located at 350 West 1st Street, 9th Floor, Los Angeles, California 90012, Plaintiff ATAIN SPECIALTY INSURANCE COMPANY ("Atain") will, and hereby does, move this Court for an order granting summary judgment in its favor on its

1   Complaint for Declaratory Relief and all causes of action therein. Atain also seeks

2   summary judgment dismissing Lake Lindero Homeowners Association's and Lordon

3   Enterprises, Inc. dba Lordon Management's Counterclaim in its entirety.

4       This motion is made following the conference of counsel pursuant to L.R. 7-3

5   which took place on October 1, 2020.

6       This motion is made on the following grounds:

7       (1)    That as a matter of law, Atain is entitled to rescind Policy No.

8   NDS00380 due to material representations and concealments made by Lake Lindero

9   Homeowners Association ("LLHOA") in its application for insurance and

10   consequently, Atain is entitled to an Order and Judgment rescinding Policy No.

11   NDS00380 such that it is null and void *ab initio*, and such that Atain had no duty to

12   defend or indemnify LLHOA or Lordon Enterprises, Inc. ("Lordon") against the

13   claims asserted by Golf Projects Lindero, Inc. ("GPL") in a lawsuit and no obligation

14   to satisfy any judgment GPL may obtain in that lawsuit.

15       (2)    Alternatively, this motion is made on the grounds that, as a matter of

16   law, under the terms of Policy No. NDS00380, specifically under the terms of the

17   policy's insuring agreement, the policy exclusion for Breach of Contract, and the

18   exclusion for claims asserted by the insured's property manager, Atain does not and

19   never had a duty to defend or duty to indemnify LLHOA or Lordon against the

20   claims asserted by GPL, all of which arise out of LLHOA's and Lordon's breach of

21   the Management Agreement between LLHOA and GPL and, consequently, Atain is

22   entitled to a judicial declaration that, as a matter of law, it has no duty to defend or

23   indemnify LLHOA or Lordon; has no obligation to satisfy any judgment that may be

24   entered in favor of GPL, and that it may withdraw from the defense of LLHOA and

25   Lordon in the GPL lawsuit.

26       (3)    Because Atain may rescind Policy No. NDS00380, LLHOA's and

27   Lordon's Counterclaim for Declaratory Judgment—Duty to Defend fails as a matter

28   of law.

(4)     Because Policy No. DNS00380 provides no coverage for this loss, Atain has and never had a duty to defend LLHOA or Lordon and for this reason, LLHOA's and Lordon's Counterclaim for Declaratory Judgment—Duty to Defend fails as a matter of law.

Atain's motion will be and is made pursuant to Rule 56 of the Federal Rules of Civil Procedure, Local Rule 56.1, and is based on this Notice of Motion and Motion, the accompanying Memorandum and Points of Authorities, the Declaration of Jessalynn H. Suda, Sally Rock and GailAnn Y. Stargardter and the Exhibits attached thereto, each of which is filed concurrently herewith, and on all such further evidence, documents and arguments as may be presented to the Court at or before hearing on this motion.

Dated: October 19, 2020                 MOKRI VANIS & JONES, LLP

/s/ *GailAnn Y. Stargardter*
GailAnn Y. Stargardter
Jason D. Page
Attorneys for Plaintiff ATAIN SPECIALTY INSURANCE COMPANY

# **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION.................................................................1

TABLE OF CONTENTS ......................................................................................i

TABLE OF AUTHORITIES.................................................................................iii

MEMORANDUM OF POINTS AND AUTHORITIES ........................................1

I.      INTRODUCTION, RELIEF REQUESTED AND SUMMARY OF
        ARGUMENTS ............................................................................................1

    A.  Atain Is Entitled To Rescind Policy No. NDS00380................................2

    B.  Policy No. NDS00380 Provides No Coverage For GPL's Claims ............3

    C.  Atain Is Not Estopped To Deny Coverage ...............................................4

II.     UNDISPUTED FACTS.................................................................................5

    A.  Undisputed Facts Supporting Atain's Claim For Rescission. ...................5

        1.  The Response To Question 18 .............................................................5

        2.  The Response to Question 19 ..............................................................5

        3.  But For LLHOA's Misrepresentations And Concealments, Atain Would
            Not Have Issued Policy No. NDS00380 ..............................................7

    B.  Undisputed Facts Supporting Atain Has No Duty To Defend Or Indemnify
        LLHOA Or Lordon......................................................................................7

        1.  The Atain Policy Language .................................................................7

        2.  Allegations In The First Amended Complaint Filed By GPL....................10

        3.  Tender Of Defense To Atain And Atain's Response ................................11

        4.  Filing Of This Action...........................................................................11

        5.  Subsequent Developments ....................................................................11

III.    LEGAL ARGUMENT .................................................................................11

    A.  Summary Judgment Standard...................................................................11

    B.  Atain Is Entitled Summary Judgment On Its Cause Of Action For Rescission
        12

        1.  LLHOA Concealed And/Or Misrepresented Facts In Responding To
            Question On The Application..............................................................13

        2.  The Facts Concealed By LLHOA Were Material ....................................17

        3.  Atain is entitled to rescind Policy No. NDS00380....................................18

C.   Atain Is Entitled  Summary Judgment On Its Cause  of Action for Declaratory Relief That It Has No Duty To Defend Or Indemnify LLHOA Or Lordon ........... 18

   1.   The Duty To Defend Although Broad Is Not Unlimited ............................. 18

   2.   The Rules For Interpreting Insurance Policies ............................................ 19

      a.   The policy must be given its plain meaning ............................................. 19

      b.   The Court must first determine if the policy terms are ambiguous .......... 19

      c.   Only if the Court finds an ambiguity will the policy be interpreted to comport with the insured's reasonable expectations ....................................... 20

   3.   Applying These Rules, Atain Has No Duty To Defend Or Indemnify LLHOA Or Lordon, As A Matter Of law ............................................................ 21

      a.   LLHOA's Breach of Contract is not a "wrongful act" ............................. 21

      b.   The Breach of Contract Exclusion removes all potential for coverage for the claims asserted by GPL and Lordon ........................................................... 22

      c.   The Additional Insured Endorsement removes all potential for coverage for GPL's claims ................................................................................................ 22

D.   Atain Is Not Estopped To Deny Coverage ................................................ 24

E.   Atain Is Entitled To Summary Judgment On LLHOA's And Lordon's Counterclaim ........................................................................................................ 25

IV.   CONCLUSION .............................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**

*AIU Ins. Co v. Super. Ct.*,
  51 Cal.3d 807 (1990) .................................................................................... 19

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ...................................................................................... 12

*Applied Med. Res. Corp. v. U.S. Surgical Corp.*,
  352 F.Supp.2d 1119 (C.D. Cal. 2005) ......................................................... 12

*Atmel Corp. v. St. Paul Fire & Marine Ins. Co.*,
  421 F.Supp.2d 1265 (N.D. Cal. 2006) ........................................................... 3

*August Entertainment, Inc. v. Philadelphia Indemnity Ins. Co.*,
  146 Cal.App.4th 565 (2007) .................................................................... 21, 22

*Baker v. Nat'l Interstate Ins. Co.*,
  180 Cal.App.4th 1319 (2009) ........................................................... 19, 20, 21

*Bank of the West v. Super. Ct.*,
  2 Cal.4th 1254 (1992) ................................................................................... 19

*Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*,
  5 Cal.4th 854 (1993) ..................................................................................... 20

*California v. Campbell*,
  138 F.3d 772 (9th Cir. 1998) ........................................................................ 12

*Coregis Ins. Co. v. Camico Mut. Ins. Co.*,
  949 F.Supp. 1213 (C.D. Cal. 1997) ............................................................. 16

*E.M.M.I. Inc. v. Zurich Am. Ins. Co.*,
  32 Cal.4th 465 (2004) ................................................................................... 20

*Fed. Ins. Co. v. Curon Med. Inc.*,
  C-03-1356 VRW 2004 U.S. Dist. LEXIS 22365
  (N.D. Cal. October 28, 2004) .............................................. 14, 15, 16, 17

*Fire Ins. Exch. v. Super. Ct.*,
  116 Cal.App.4th 446 (2004) ......................................................................... 19

*Gray v. Zurich Ins. Co.*,
  65 Cal.2d. 263 (1965) ................................................................................... 18

*Group Voyages, Inc. v. Emplrs. Ins. of Wausau*,
  No. C01-0400 SI, 2002 U.S. Dist. LEXIS 3674 (N. D. Cal., 2002) ............ 21

*Hartford Fire Ins. Co. v. Spartan Realty Int'l.*,
  196 Cal.App.3d 1320 (1987) ........................................................................ 24

*Imperial Cas. & Indem. Co. v. Sogomonian*,
  198 Cal.App.3d 169 (1988) ....................................................... 2, 12, 13, 17

*Ins. Co. of the W. v. Haralambos Beverage Co.*,
  195 Cal.App.3d 1308 (1987 .......................................................................... 24

*James River Ins. Co. v. Medolac Labs*,
  290 F.Supp.3d 956 (C.D. California 2018) ............................................ 3, 22

*Jaunich v. National Fire Union Ins. Co.*,
  647 F.Supp. 209 (N. D. Cal. 1986) .............................................................. 17

*Jon Davler, Inc. v. Arch Ins. Co.*,
  229 Cal.App.4th 1025 (2014).................................................................20

*La Jolla Beach & Tennis Club v. Indus. Indem. Co.*,
  9 Cal.4th 27 (1994)..............................................................................18

*LA Sound USA, Inc. v. St. Paul Fire & Marine Ins. Co.*,
  156 Cal.App.4th 1259 (2007)................................................................13

*Liodas v. Sahadi*,
  19 Cal.3d 278 (1997)............................................................................12

*Lockheed Corp. v. Continental Ins. Co.*
  (2005) 134 Cal.App.4th 187.................................................................20

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986).............................................................................12

*Medill v. Westport Ins. Corp.*,
  143 Cal.App.4th 819 (2006)..................................................................22

*Montgomery v. Cal. Accountants Mut. Ins. Co.*,
  61 Cal.App.4th 854 (1998)..............................................................22, 23

*Montrose Chem. Corp. v. Super. Ct.*,
  6 Cal.4th 287 (1993).......................................................................18, 19

*Nissel v. Certain Underwriters at Lloyd's of London*,
  62 Cal.App.4th 1103 (1998)..................................................................21

*O'Riordan v. Federal Kemper Life Assur.*,
  36 Cal.4th 281 (2005)...........................................................................13

*Oak Park Calabasas Condominium Assn. v. State Farm Fire & Cas. Co.*,
  137 Cal.App.4th 557 (2006)..............................................................3, 21

*Old Line Life Ins. Co. v. Superior Court*,
  229 Cal.App.3d 1600 (1991)...................................................................2

*Penn-Star Ins. Co. v. Caden Cos.*,
  No. 17-2369-AB (PLAx), 2017 U. S. Dist. LEXIS 213387 (C.D. Cal. 2017) .........3

*Pepper Industries, Inc. v. Home Ins. Co.*,
  67 Cal.App.3d 1012 (1977)...................................................................12

*Phoenix Ins. Co. v. Sukut Construction Co.*,
  136 Cal.App.3d 673 (1982)...................................................................16

*Ringler Assoc. Inc. v. Maryland Cas. Co.*,
  80 Cal.App.4th 1165 (2000).............................................................4, 24

*Rosen v. E.C. Losch, Inc.*,
  234 Cal.App.2d 324 (1965)...................................................................20

*St. Paul Mercury Ins. Co. v. Frontier Pacific Ins. Co.*,
  111 Cal.App.4th 1234 (2003)............................................................20, 21

*State Farm Fire & Cas. Co. v. Eddy*,
  218 Cal.App.3d 958 (1990)...................................................................12

*State Farm Fire & Cas. Co. v. Jioras*,
  24 Cal.App.4th 1619 (2004)..................................................................24

*State of California v. Allstate Ins. Co.*,
  45 Cal.4th 1008 (2009).........................................................................19

*Thompson v. Occidental Life Ins. Co.*,
  9 Cal.3d 904 (1973)....................................................................................2, 13, 17

*TIG Ins. Co. of Michigan v. Homestore, Inc.*,
  137 Cal.App.4th 749 (2006) .......................................................................... 2

*Waller v. Truck Ins. Exch., Inc.*,
  11 Cal.4th 1 (1995)..............................................................12, 18, 19, 20, 24

*Watts Indus. Inc. v. Zurich Am. Ins. Co.*,
  121 Cal.App.4th 1029 (2004)........................................................................ 19

**Statutes**

California Evidence Code, § 115.................................................................... 12

California Insurance Code, § 330.................................................................... 2

California Insurance Code, § 331........................................................2, 13, 17

California Insurance Code, § 332.................................................................... 2

California Insurance Code, § 334.................................................................... 2

California Insurance Code, § 360.................................................................... 2

**Rules**

Federal Rules of Civil Procedure, rule 56(a)................................................ 11

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION, RELIEF REQUESTED AND SUMMARY OF ARGUMENTS

This is an insurance coverage dispute between Atain Specialty Insurance Company ("Atain") its insureds, Lake Lindero Homeowners Association ("LLHOA") and Lordon Enterprises, Inc. ("Lordon") and a third-party claimant, Golf Projects Lindero, Inc. ("GPL"), who sued LLHOA and Lordon asserting various claims arising out of the breach of a long standing Lease and Management Agreement ("Agreement"). Atain seeks a judicial determination that it has no duty to defend or indemnify LLHOA or Lordon because at the time LLHOA submitted its application for insurance, it misrepresented and/or concealed material information from Atain in response to two question on the application. Had LLHOA truthfully responded to those questions Atain would not have issued the policy. Accordingly, Atain is entitled to rescind the policy. Alternatively, Atain seeks a judicial determination that it has and never had any duty to defend or indemnify LLHOA or Lordon against the claims asserted by GPL as those claims do not fall within the scope of coverage afforded by Policy No. NDS00380 and as all potential for coverage for those claims is excluded.

Atain's first notice of this loss was the receipt of the initial Complaint filed by GPL. Shortly thereafter, Atain received the First Amended Complaint. Atain immediately provided a defense to LLHOA and Lordon. Atain did not reserve rights.

Atain sought review of the GPL Action and its coverage obligations from counsel. From declarations filed by the parties to the GPL Action and in another lawsuit filed against LLHOA arising out of its termination of the Agreement with GPL, Atain learned that LLHOA misrepresented and concealed material information from Atain in response to Questions 18 and 19 on the application—which inquired about past claims and potential claims. Atain also determined that in addition to having a basis to rescind Policy No. NDS00380, it never had a duty to defend or indemnify LLHOA or Lordon based on the policy terms, conditions and exclusions.

Atain filed this lawsuit seeking a judicial determination of its rights under the policy. Atain continues to provide a defense to LLHOA and Lordon. Atain in not seeking reimbursement of attorney fees.

### A.   Atain Is Entitled To Rescind Policy No. NDS00380

LLHOA is required to communicate to Atain, in good faith, all facts within its knowledge which are material to the contract and which Atain has no means of ascertaining. Cal. Ins. Code, § 332. The failure to do so, is concealment. Cal. Ins. Code, § 330. "Concealment, whether intentional or unintentional, entitles the injured party to rescind insurance." Insurance Code, § 331; *TIG Ins. Co. of Michigan v. Homestore, Inc*., 137 Cal.App.4th 749, 755-56 (2006). Actual intent to deceive need not be shown. *Thompson v. Occidental Life Ins. Co*., 9 Cal.3d 904, 916 (1973).

The materiality of a misrepresentation or concealment is determined solely from Atain's perspective. Insurance Code, §§ 334, 360; *Imperial Cas. & Indem. Co. v. Sogomonian,* 198 Cal.App.3d 169, 181 (1988) . The only question is whether Atain was misled into accepting a risk or fixing premium. *Old Line Life Ins. Co. v. Superior Court*, 229 Cal.App.3d 1600, 1605 (1991). If the answer to that question is yes, Atain may rescind the policy. *Ibid*.

In response to direct questions asking for information, LLHOA failed to disclose two inquiries and complaints made against it within five years of applying for the policy. LLHOA also failed to disclose facts and circumstances, of which it was aware, which may result in a claim being asserted against it. Had LLHOA truthfully disclosed that prior inquiries/complaints had been made against it and it was planning on unilaterally terminating the Agreement with GPL—which still had 32 years remaining—facts of which it was aware that might cause a claim or claims to be filed against it, Atain would not have issued the policy.

Atain is entitled to rescind the policy. Rescission voids the policy *ab initio* – from the beginning. Thus, a liability insurer that properly rescinds also has no duty to defend or indemnify claims against the insured. *Atmel Corp. v. St. Paul Fire &*

MOTION FOR SUMMARY JUDGMENT

2

Case No. 2:19-cv-09824 DSF (MRWx)

*Marine Ins. Co.*, 421 F. Supp.2d 1265, 1269 (N.D. Cal. 2006).

**B.** **Policy No. NDS00380 Provides No Coverage For GPL's Claims**

Even assuming the Court finds Atain is not entitled to rescind issued Policy No. NDS00380, because the policy affords no coverage for the claims asserted against LLHOA and Lordon by GPL, Atain is entitled to a judicial determination that it has no obligation to defend or indemnify LLHOA or Lordon. Atain is also entitled to a judicial determination that should GPL obtain a judgment against LLHOA or Lordon and seek to enforce that judgment against Atain, Atain is not obligated to pay that judgment.

The policy includes Coverage Part A: Directors And Officers Liability Coverage. This portion of the Policy requires Atain to pay damages the insured is legally obligated to pay as a result of a "wrongful act." "Wrongful act" is defined as "any actual or alleged negligent act, error or omission…." An insured's refusal to honor a contract is not a "wrongful act." *Oak Park Calabasas Condominium Assn. v. State Farm Fire & Cas. Co.*, 137 Cal.App.4th 557, 564 (2006) ("*Oak Park*"). That an insured would choose to violate a contract it voluntarily entered into is not a risk to be borne by an insurer. *Ibid*. The claims asserted against LLHOA and Lordon do not fall within the scope of the insuring agreement. Atain has, and never had, a duty to defend or indemnify LLHOA or Lordon, as a matter of law.

Policy No. NDS00380 excludes coverage for breach of contract. Breach of contract exclusions bar coverage not only for breach of contract claims, but also bar coverage of any other claims based on the same conduct as alleged to constitute the breach of contract. *James River Ins. Co. v. Medolac Labs*, 290 F.Supp.3d 956, 968 (C.D. California 2018); *Penn-Star Ins. Co. v. Caden Cos.,* No. 17-2369-AB (PLAx), 2017 U. S. Dist. LEXIS 213387, *15-16 (C.D. Cal. 2017). The breach of contract exclusion eliminates all potential for coverage for GPL's claims against LLHOA and Lordon, as a matter of law.

Policy No. NDS00380, by endorsement, also excludes coverage for claims

1   brought by or on behalf of the property manager/management company. GPL was

2   LLHOA's property manager/management company. GPL's lawsuit seeks damages

3   due to LLHOA's breach of the Agreement. This exclusion removes all potential for

4   coverage for the claims asserted against LLHOA and Lordon, as a matter of law.

5           **C.     <u>Atain Is Not Estopped To Deny Coverage</u>**

6           An insurer does not waive or relinquish any coverage defenses it fails to assert

7   at the time of its acceptance of a tender of defense, even when it does not make any

8   express and full reservation of rights for a substantial period of time after the defense

9   has been accepted. *Ringler Assoc. Inc. v. Maryland Cas. Co*., 80 Cal.App.4th 1165,

10  1189 (2000). The only question is whether Atain is estopped to deny coverage for the

11  GPL lawsuit.

12          LLHOA and Lordon have the burden of proving Atain is estopped to deny

13  coverage based on its failure to reserve rights. LLHOA and Lordon must prove (1)

14  they had a reasonable belief that Atain would provide coverage <u>*and*</u> (2) that they

15  relied on that belief, to their detriment. *Ringler,* 80 Cal.App.4th at 1190. Both

16  showings are essential to a claim of estoppel. *Ibid*. LLHOA and Lordon cannot meet

17  their burden of proving detrimental reliance. Under Policy No. NDS00380, LLHOA

18  controls settlement. The parties have participated in two mediations. The case has not

19  settled.

20          For all of these reasons, this Court should grant Atain's Motion for Summary

21  Judgment either on the basis that Policy No. NDS00380 is rescinded due to

22  LLHOA's material misrepresentations and/or concealments on the application or on

23  the basis that the policy provides no coverage for the GPL lawsuit.

24          Because Policy No. NDS00380 is rescinded, or because by its terms and

25  exclusions it provides no coverage for the GPL Action, Atain is also entitled to

26  summary judgment in its favor dismissing LLHOA's and Lordon's Counterclaim.

27  / / /

28  / / /

MOTION FOR SUMMARY                          4                    Case No. 2:19-cv-09824 DSF (MRWx)
JUDGMENT

## II.        UNDISPUTED FACTS

### A.        Undisputed Facts Supporting Atain's Claim For Rescission.

On May 14, 2018, LLHOA submitted an application for insurance to Atain. (Fact 1.) The application was signed by Hal Siegal, LLHOA's treasurer. (Fact 1.)

#### 1.        The Response To Question 18

Question 18 asked, "Within the last 5 years, has any inquiry, complaint, notice of hearing, claim or suit been made (including but not limited to, Equal Employment Opportunity commission, State Human Rights Board, Municipal, State or Federal Regulatory Authorities), against the organization, or any person proposed for Insurance in the capacity of either Director, Officer, Trustee, Employee or Volunteer Organization" (Fact 2.) LLHOA answered "No." (Fact 3.)

As Atain subsequently learned, in 2015, a complaint and decision regarding LLHOA's mis-use of its liquor license was filed by the Department of Alcoholic Beverage Control for the State of California. (Fact 4.)

In 2017, the State of California Water Resources Control Board informed LLHOA that it was in violation of the license agreement regarding the use of Lake Lindero. (Fact 5.) As a result of that complaint, LLHOA was required to pay $310,000.00 to repair the sluice gate in the lake and for additional costs associated with other State agencies involved in the project. (Fact 6.)

#### 2.        The Response to Question 19

Question 19 asked, "Is any person proposed for this insurance aware of any fact, circumstance or situation, which may result in a claim against the organization or any of its Directors…?" (Fact 7.) LLHOA answered "No" to Question 19 of the Application. (Fact 8.)

As Atain subsequently learned, the cost of repairs required to respond to the Water Resources Control Board's complaint resulted in an Emergency Assessment requiring each homeowner to pay $675.00. (Fact 9.) The Emergency Assessment lead to a recall of the Board of Directors and the election of a new Board. (Fact 10.)

Christopher Barone ran for election to the Board on a "Get Rid of GPL" platform. (Fact 11.) Mr. Barone issued a flier promising that, if elected, he would be "reviewing contracts and agreements with GPL and the HOA attorney to ensure their contracts are terminated as soon as legally possible." (Fact 12.) Mr. Barone promised that he would, "no longer allow the bullying tactics and disrespect seen in past years to continue" and that "[t]hose days will be over the first minute he is elected." (Fact 13.) He acknowledged that LLHOA would have "serious and treacherous water to navigate in the coming months." (Fact 14.)

Mr. Barone was elected to Board and became Board President. (Fact 15.) True to his word, beginning in April of 2018, the Board began sending a series of ten Notices to GPL: (1) April 17, 2018 (demanding payment of $310,000 and threatening to terminate the agreement for cause if not reimbursed within 15 days; (2) April 17, 2018 (failure to keep stairs in mini-park in safe condition—15 days to repair; (3) May 3, 2018 (notice of tree that needs trimming, causing dangerous condition—15 days to repair; (4) May 3, 2018 (lake aeration system broken, must be replaced—15 days to repair; (5) May 3, 2018 (mini-park irrigation system broken—15 days to repair; (6) ball catcher in creek behind driving range broken—15 days to repair; (7) May 3, 2018 (2 large trees on 8th hole of golf course need to be removed—15 days to repair; (8)  May 8, 2018 (solar panel/roof issues); (9) May 8, 2018 (cooling measures for kitchen; and (10) May 8, 2018 (boat ramp). (Fact 16.)

Mr. Barone invited other property management companies to come on to the property to perform inspections so they could bid for a new management contract— even though the contract between GPL and LLHOA ran through 2050. (Fact 17.)

As of 2017, LLHOA was on notice, as a result of a prior dispute with GPL, that if the contract with GPL was terminated, at least one  homeowner would file suit against it. (Fact 18.)

On July 11, 2018, the Board terminated the Agreement with GPL. (Fact 19.)

/ / /

MOTION FOR SUMMARY JUDGMENT

6

Case No. 2:19-cv-09824 DSF (MRWx)

**3.     But For LLHOA's Misrepresentations And Concealments, Atain Would Not Have Issued Policy No. NDS00380**

On March 14, 2018, the date the application with the answers to Questions 18 and 19 marked "No" was submitted to Atain, LLHOA knew of two prior complaints, one of which lead to an Emergency Assessment to raise $310,000.00 and resulted in a recall of the Board and knew that it was intending to sever it longstanding relationship with GPL. (Facts 4-6.) LLHOA knew that one year earlier, in the context of another dispute with GPL, at least one homeowner had threatened to sue LLHOA if the relationship with GPL was not salvaged. (Fact 18.) LLHOA was aware of facts, circumstances or a situation which may result in a claim against it. (Facts 11-17.)

The information sought by Atain in Questions 18 and 19 was material to Atain's determination to issue the policy. (Fact 20.) Atain issued Policy No. NDS00380 based on the statements contained in the application, including the answers to Questions 18 and 19. (Fact 21.) Had LLHOA truthfully responded to Questions 18 and 19, Atain would not have issued Policy No. NDS00380. (Fact 22.)

**B.     Undisputed Facts Supporting Atain Has No Duty To Defend Or Indemnify LLHOA Or Lordon**

**1.     The Atain Policy Language**

Atain issued Policy No. NDS00380 to LLHOA for policy period June 6, 2018 through June 6, 2019. (Fact 23.) The Policy includes **Non Profits Professional Liability Common Policy Conditions** Form NPDOL0001 (05/14),  which includes the following provisions:

**I.     DEFENSE, INVESTIGATION AND SETTLEMENT OF CLAIMS**

* * *

The **COMPANY**, as it deems expedient, has the right to investigate, adjust, defend, appeal and, with the consent of the **INSURED**, negotiate the settlement of any **CLAIM**, whether

within or above the Retention….

(Fact 24.)

## IV.   REPRESENTATIONS AND SEVERABILITY

A.   The **INSURED** represents that the particulars and statements contained in the **APPLICATION** are true and agree that (1) those particulars and statements are the basis of this Policy and are to be considered as incorporated into and constituting a part of the Policy; (2) those particulars and statements are material to the acceptance of the risk assumed by the **COMPANY**; and (3) the Policy is issued in reliance upon the truth of such representations.

B.   Except for material facts or circumstances known to the person or persons signing the **APPLICATION**, no statement in the **APPLICATION** or knowledge or information possessed by an **INSURED** shall be imputed to any other **INSURED** for the purpose of determining the availability of coverage.

(Fact 25.)

The policy also includes **Coverage Part A—Non-Profit Directors and Officers Liability—**Form NPDOL0002 (05/14), which states:

### INSURING AGREEMENTS

## I.   COVERAGE

The **COMPANY** will pay on behalf of the **INSURED** all **LOSS** in excess of the Retention not exceeding the limit of liability for which this coverage applies which the **INSUREDS** shall be legally obligated to pay as a result of any **CLAIM** made against the **INSURED** due to a **WRONGFUL ACT**, provided that the **CLAIM** is first made during the **POLICY PERIOD** and written

notice of said **CLAIM** is received by the **COMPANY** no later than sixty (60) days after the expiration of **the POLICY PERIOD** or during any Extended Reporting Period, if applicable.

(Fact 26.)

**Coverage Part A—Non-Profit Directors and Officers Liabili**ty—Form NPDOL0002 (05/14), defines "wrongful act" as:

> **IV. DEFINITIONS**
>
> M. **WRONGFUL ACT** means any actual or alleged negligent act, error or omissions, misstatement misleading statement, or breach of duty committed by an **INSURED** in the performance of duties on behalf of the **ENTITY**.

(Fact 27.)

**Coverage Part A—Non-Profit Directors and Officers Liability—**Form NPDOL0002 (05/14), contains the following exclusion:

> This policy does not apply to:
>
> J. Any **CLAIMS**, demands or actions seeking relief or redress from either a willful, intentional, knowing, tortious, or negligent breach of, failure to perform in whole or in part, any oral, written or implied contract between the **INSURED** and any other person, except any oral written or implied contract relating to that person's employment by the **INSURED**.

(Fact 28.)

Policy No. NDS00380 contains Endorsement NPDOL 0045 (09/11)—**ADDITIONAL INSURED ENDORSEMENT—PROPERTY MANAGER /MANAGEMENT COMPANY**, which states:

> **This Endorsement Modifies insurance provided under the following:**

| **NON PROFIT DIRECTORS & OFFICERS LIABILITY** |
| --- |

The property manager/management company is included as an additional **INSURED** under this policy but only with respect to claims arising out of wrongful act(s) or wrongful employment act(s) while acting within the scope of his or her duties on behalf of the **NAMED INSURED**.

However, there shall be no coverage afforded for a **CLAIM** brought by or on behalf of (1) the property manager/management company; (2) any current or former employee thereof; or (3) any applicant for employment with the property manager/management company.

(Fact 29.)

### 2. Allegations In The First Amended Complaint Filed By GPL

GPL filed suit against LLHOA on August 6, 2018. (Fact 30.) GPL filed its First Amended Complaint for Damages ("FAC") against LLHOA and Lordon on August 27, 2018. (Fact 31.) The FAC alleges that on August 18, 1994, LLHOA and GPL entered into a Lease Management Agreement. (Fact 32.) On November 4, 2013, the Lease Management Agreement was extended through 2050. (Fact 33.) The FAC alleges that beginning Friday July 6, 2018, LLHOA failed and refused to transmit the weekly payment of monthly dues to [GPL] in breach of the Agreement and indicated it will continue to breach the Agreement by not transferring the August 2018 monthly dues and further dues to [GPL]. (Fact 34.)

The FAC asserts five causes of action: (1) Breach of Written Agreement against LLHOA; (2) For Money Had and Received (against LLHOA; (3) Interpleader (against LLHOA); (4) Tortious Interference with Contractual Relations (Lordon); and (5) Interference with Prospective Economic Advantage (LLHOA). Each cause of action is based on the allegations that LLHOA breached its contract with GPL. (Fact 35.)

### 3.  Tender Of Defense To Atain And Atain's Response

LLHOA as the named insured tendered defense of the GPL Action to Atain on August 8, 2018. (Fact 36.) Atain accepted the defense and appointed defense counsel. (Fact 37.) Lordon, as an additional insured under the policy issued to LLHOA, tendered defense of the FAC filed in the GPL Action to Atain. (Fact 38.) Atain accepted the defense. (Fact 39.) In accepting the defense of both LLHOA and Lordon, Atain did not reserve any rights it had under the policy. (Fact 40.)

The policy issued to LLHOA requires the insureds' consent to settle claims asserted against it. (Fact 24.) The GPL Action was mediated before Judge Alexander Williams, III (Ret.) on June 3, 2019; the case did not settle. (Fact 41.)

### 4.  Filing Of This Action

On November 15, 2019, Atain filed its Complaint for Rescission and Declaratory Relief. (Fact 42.) On January 10, 2020, LLHOA and Lordon filed a Counterclaim for Declaratory Relief (Fact 43.) By stipulation, Atain filed a Second Amended Complaint on March 23, 2020 (Dkt. 43 and Dkt. 48.) LLHOA and Lordon filed their Answer to the Second Amended Complaint on April 24, 2020 (Dkt. 51.) GPL filed its Answer to the Second Amended Complaint on April 24, 2020 (Dkt. 52.) Atain continues to provide LLHOA and Lordon with a full and complete defense to the GPL Action (Fact 44.)

### 5.  Subsequent Developments

The parties to the GPL Action and this Action attended a global mediation before Judge Stephen J. Sunvold (Ret.) on August 25, 2020; the case did not settle. (Fact 45.)

## III.  LEGAL ARGUMENT

### A.  Summary Judgment Standard

Summary judgment is warranted where the pleadings, discovery, and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *California v.*

1  *Campbell*, 138 F.3d 772, 780 (9th Cir. 1998). Where the record, taken as a whole,

2  could not lead a rational trier of fact to find for the non-moving party, there is no

3  genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

4  574, 587 (1986); *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 352 F.Supp.2d

5  1119, 1123 (C.D. Cal. 2005). Thus, the district court should grant summary judgment

6  if the evidence would require a directed verdict for the moving party. *Anderson v.*

7  *Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

8        Summary judgment is appropriate in rescission actions when there is no factual

9  dispute that the insured concealed or misrepresented information requested by an

10  insurer and that the policy was issued in reliance on the truth of the statements

11  contained in the application. *Imperial Cas. & Indem Co., supra*, 198 Cal.App.3d at

12  179.

13        Interpretation of an insurance policy is a question of law for the court. *Waller*

14  *v. Truck Ins. Exch., Inc.*, 11 Cal.4th 1, 18 (1995). Summary judgment is an

15  appropriate means of determining whether coverage and a duty to defend or

16  indemnify exists under an insurance policy where there are no issues of material fact

17  to be tried and the sole issue before the court is one of law. *State Farm Fire & Cas.*

18  *Co. v. Eddy*, 218 Cal.App.3d 958, 964-965 (1990), citing *Pepper Industries, Inc. v.*

19  *Home Ins. Co.*, 67 Cal.App.3d 1012, 1017 (1977).

20      **B.**    **Atain Is Entitled Summary Judgment On Its Cause Of Action For**

21           **Rescission**

22        To prevail on its rescission action, Atain must prove, by a preponderance of the

23  evidence (See, Cal. Evid. Code, § 115; *Liodas v. Sahadi*, 19 Cal.3d 278, 291 (1997)

24  ("Preponderance of evidence burden of proof applies in all civil actions, including

25  civil fraud actions"), that LLHOA: (1) misrepresented or concealed information

26  known to it and requested by Atain in the applications for insurance; (2) the

27  information requested was material to its decision to issue the policy; and (3) had

28  LLHOA accurately responded to the questions on the application, the policy would

MOTION FOR SUMMARY           12       Case No. 2:19-cv-09824 DSF (MRWx)
JUDGMENT

1  not have been issued, or would have been issued with materially different terms.

2  *Imperial Cas. & Indem. Co.* 198 Cal.App.3d at 181.

3       Misstatements or concealments of any material fact in an insurance

4  application, even if unintentional, entitle the insurer to rescind. *LA Sound USA, Inc. v.*

5  *St. Paul Fire & Marine Ins. Co.*, 156 Cal.App.4th 1259, 1267 (2007). Atain need not

6  prove that LLHOA intended to deceive it. *Thompson*, 9 Cal.3d at 916; *O'Riordan v.*

7  *Federal Kemper Life Assur.*, 36 Cal.4th 281, 286-287 (2005).

8       Materiality is determined solely by the probable and reasonable influence of

9  the facts upon the party to whom the communication is due—in this instance, Atain.

10  Cal. Ins. Code, § 331. *Thompson,* 9 Cal.3d at 916. The test for materiality is a

11  subjective test—information is material if it would have caused the underwriter to

12  reject the application, charge a higher premium, or amend the terms under which the

13  policy was issued. *Imperial Cas.& Indem. Co.,* 198 Cal.App.3d at 181.

### 1.   LLHOA Concealed And/Or Misrepresented Facts In Responding To Question On The Application

16       The facts are not in dispute. At the time LLHOA submitted the application for

17  Policy No. NDS00380 it knew the "No" responses to Questions 18 and 19 were false.

18  Question 18 asked if, within the last five years, any inquiry, complaint, notice of

19  hearing, claim or suit had been made against LLHOA, including by any State of

20  Federal Regulatory Authorities. (Fact 2.) LLHOA responded "No." (Fact 3.) But

21  LLHOA knew that it had received a complaint and entered into settlement with the

22  Alcohol Beverage Control Board for the State of California. LLHOA knew that as a

23  result of an inquiry/complaint from the State of California Water Resources Control

24  Board it was required to pay $310,000 to repair the sluice gate at Lake Lindero in

25  order to remain in compliance with the terms of its lease with the State, which lead to

26  an Emergency Assessment against the homeowners and ultimately lead to the recall

27  of the Board. (Facts 4-6; and 9-10.) The response to Question 18 was a

28  misrepresentation or concealment.

MOTION FOR SUMMARY
JUDGMENT

13

Case No. 2:19-cv-09824 DSF (MRWx)

Question 19—asked: "Is any person proposed for this insurance aware of any fact, circumstance or situation, which may result in a claim against the organization or any of its Directors…?" The response to this Question as also marked "No." (Facts 7-8.)

But at the time the application was submitted, LLHOA knew that Mr. Barone had been elected to the Board based on his promise to terminate GPL's contract. (Fact 11.) Mr. Barone's determination to oust GPL was blatant: He promised to ensure GPL's contract was terminated. (Fact 12.) He promised that he would, "no longer allow the bullying tactics and disrespect seen in past years to continue" and that, "[t]hose days will be over the first minute he is elected." (Fact 13.) Mr. Barone acknowledged that LLHOA would have "serious and treacherous water to navigate in the coming months." (Fact 14.)

At the time the application was submitted to Atain LLHOA knew that substantial steps toward terminating the Agreement with GPL were underway. (Facts 16-17.) The Board had already issued 10 Notices to GPL in support of its termination efforts. (Fact 16.) Mr. Barone was interviewing candidates to replace GPL. (Fact 17.) By responding "No" to Question 19, LLHOA misrepresented or concealed information from Atain.

Question 19 is not limited to actual claims. Rather, Question 19 called for disclosure of incidents that might give rise to a claim. In *Fed. Ins. Co. v. Curon Med. Inc.*, the Court was asked to determine whether an insured's "No" response to this same question was a misrepresentation when at the time it responded, the insured had information regarding a potential claim. *Fed. Ins. Co. v. Curon Med. Inc.*, C-03-1356 VRW 2004 U.S. Dist. LEXIS 22365, *5 and Table 1 (N.D. Cal. October 28, 2004). Curon developed, manufactured and marketed products for the treatment of gastrointestinal disorders. It entered into an agreement for a clinical trial with Dr. Nagle and Graduate Hospital. Curon agreed to indemnify Graduate Hospital for losses and costs sustained as part of the clinical trials. *Id.* at *3.

MOTION FOR SUMMARY JUDGMENT

14

Case No. 2:19-cv-09824 DSF (MRWx)

Guckin participated in the trials. Guckin was injured during the trials. She was admitted to the hospital for treatment. Dr. Nagle informed Curon that Guckin's injury was devastating. Three adverse incident reports were filled out. Curon received a report of a second adverse incident during trials. Curon was informed that Guckin had consulted with a lawyer. *Id*. at \*4. Curon did not consult with its lawyer because it believed it was absolved of liability for Guckin's injuries due to the informed consent form she had filled out and signed prior to participating in the trials. *Ibid*.

In May of 2002, Curon's CFO submitted an application to Federal Insurance Company ("Federal") for a claims made policy to cover products liability and clinical trials. *Id*. at \*5. The application asked: "Any known incidents or circumstances that might reasonably be expected to give rise to a claim? (If yes, provide details). Curon responded "No." Federal issued a policy based on Curon's answers. *Id*. at \*6.

Guckin filed suit against Curon in June of 2002. Curon tendered defense to Federal. Federal reserved its right to seek decline coverage or seek rescission of the policy based on Curon's failure to disclose the incident. *Id*. at \*7. Federal filed a Complaint for Rescission in March of 2003. *Id*. at \*8. The parties filed cross-motions for summary judgment. *Ibid*.

The Court acknowledged the crux of the dispute between Federal and Curon was whether Curon's failure to disclose the Guckin incident allowed Federal to rescind the policy. *Id*. at \*9. The Court held that Curon's failure to disclose the incident in response to the question on the application was a misrepresentation. *Id*. at \*11. The Court rejected Curon's argument that Guckin's indirect complaints were not a formal "claim," noting that the question did not seek information about actual claims but potential claims. *Id*. at \*13.

The Court also rejected Curon's request to apply the doctrine of *contra proferentum* to interpret the language in the question on the application very narrowly. The court first stated that no California or Ninth Circuit cases had applied this doctrine to applications for insurance. *Id*. at 13-14. The Court also held that

*contra proferentum* was a rule of last resort and could not be used to distort the meaning of clear language. *Id*. at \*14. The Court rejected Curon's attempt to "introduce ambiguity" into the question by asserting it failed to delineate between potential or probable claims or between frivolous or meritorious claims. *Ibid*.

Rather, the Court held "the question calls for disclosures of events that 'might reasonably be expected to give rise'" and that in construing similar language in policy exclusions other courts, including courts in the Ninth Circuit had found such language to be unambiguous. *Id*. at \*14-15, citing to *Coregis Ins. Co. v. Camico Mut. Ins. Co*., 949 F.Supp. 1213, 1221 (C.D. Cal. 1997) [holding that exclusion for claims arising out of acts, errors or omissions occurring prior to the effective date of the policy if any insured at the effective date knew or could have reasonably foreseen that such act, error or omissions, might be expected to be the basis of a claim or suit was "perfectly clear"].[1]

The Court held that given the nature of Guckin's injuries and the fact that she had consulted with a lawyer gave Curon "ample reason to believe she would bring a formal claim against Curon." *Id*. at \*15. The Court held the "No" response was material (1) because Federal had asked the question on the application and (2) because Federal's underwriter testified that had he known about the incident he would not have issued the policy. *Id*. at \*16. The Court found Curon had a duty to disclose the information to Federal because at the time it submitted the application it knew of incident and was obligated to report it. *Id*. at \*19-20. Finally, the Court rejected Curon's argument that Federal had an obligation to follow up on the response to the question at which point in time it would have learned of the Guckin incident, holding that an insurer has no duty to inquire as to the truth of representations made in an application unless it is made aware of facts that would

---

[1] The *Coregis* Court in turn cited to *Phoenix Ins. Co. v. Sukut Construction Co*., 136 Cal.App.3d 673, 676 (1982) which also held that this same exclusion was "perfectly clear."

MOTION FOR SUMMARY JUDGMENT

Case No. 2:19-cv-09824 DSF (MRWx)

1   bring that representation under suspicion. *Id*. at *21.

2        In *Jaunich v. National Fire Union Ins. Co*., 647 F.Supp. 209 (N. D. Cal. 1986),
3   the Court held that an insured's failure to disclose a number of circumstances that
4   could lead to litigation against it to an insurer while applying for a policy was a
5   material misrepresentation. *Id*. at 211. The Court held "the existence of circumstances
6   that can lead to litigation are material to an insurer's decision to issue a director's and
7   officer's liability policy," and that "such information is particularly material when the
8   information has been specifically requested as part of the insurance application."
9   *Ibid*. The Court granted summary judgment on the issue of material misrepresentation
10  to National Fire Union but held that because the insured later amended its application
11  to include some of the previously withheld information, a question existed as to
12  whether National Fire Union had waived its right to rescind. *Id*. at 212.

13       Here waiver is not an issue because LLHOA never provided the information to
14  Atain. Reasonable minds cannot differ as to whether termination of a longstanding
15  Agreement, on which 32 years remained per the terms of the contract, is precisely the
16  type of fact, circumstance or situation which <u>*may*</u> result in a claim being made against
17  an insured and should have been disclosed to Atain.

18            **2.      The Facts Concealed By LLHOA Were Material**

19       Materiality is determined solely by the probable and reasonable influence of
20  the facts upon the party to whom the communication is due—in this instance, Atain.
21  Cal. Ins. Code, § 331. *Thompson,* 9 Cal.3d at 916. The test for materiality is a
22  subjective test—information is material if it would have caused the underwriter to
23  reject the application, charge a higher premium, or amend the terms under which the
24  policy was issued. *Imperial Cas.& Indem. Co.,* 198 Cal.App.3d at 181.

25       Here, Ms. Suda testified that the answers to Questions 18 and 19 were material
26  to Atain's determination to accept or reject this risk. (Fact 20.) Moreover, the fact
27  that Atain asked the questions on the application makes the answers material as a
28  matter of law. *Thompson,* 9 Cal.3d at 916; *Imperial Cas. & Indem. Co.* 198

MOTION FOR SUMMARY                          17          Case No. 2:19-cv-09824 DSF (MRWx)
JUDGMENT

Cal.App.3d at 182.

Only Atain can testify as to what it would have done had LLHOA truthfully responded to Questions 18 and 19. Ms. Suda, Atain's Corporate Associate Vice President and the person responsible of underwriting decisions at Atain, testified that had LLHOA responded truthfully to both questions Atain would have declined to accept the risk. (Fact 22.)

### 3. Atain is entitled to rescind Policy No. NDS00380

The undisputed evidence is that LLHOA misrepresented and concealed information asked of it in response to two questions on the application. The undisputed evidence is that LLHOA's misrepresentations and concealments were material to Atain's decision to accept this risk. The undisputed evidence is that had LLHOA truthfully responded to Questions 18 and 19, Atain would have declined to accept the risk, and Policy No. NDS00380 would not have been issued. Atain has met its burden of proving it is entitled to rescind this policy, as a matter of law.

### C. __Atain Is Entitled  Summary Judgment On Its Cause  of Action for Declaratory Relief That It Has No Duty To Defend Or Indemnify LLHOA Or Lordon__

### 1. The Duty To Defend Although Broad Is Not Unlimited

Atain's duty to defend arises when a suit against an insured alleges a claim that potentially subjects the insured to liability for covered damages unless the insurer can demonstrate, by reference to undisputed facts, that the claim is not covered. *Montrose Chem. Corp. v. Super. Ct.*, 6 Cal.4th 287, 296-297 (1993). But "the duty to defend, although broad, is not unlimited; it is measured by the nature and kinds of risks covered by the policy." *Waller*, 11 Cal.4th at 19, citing *Gray v. Zurich Ins. Co.*, 65 Cal.2d. 263, 274 (1965). An insurer "need not defend if the third party complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage." *La Jolla Beach & Tennis Club v. Indus. Indem. Co.*, 9 Cal.4th 27, 39 (1994). Even if a loss clearly falls within the policy's insuring agreement there is no

18

coverage if an exclusion applies. *Watts Indus. Inc. v. Zurich Am. Ins. Co.*, 121 Cal.App.4th 1029, 1046 (2004).

LLHOA and Lordon must first establish that GPL's claims/causes of action fall within the scope of policy's insuring agreement. *Waller, supra,* 11 Cal.4th at 19. Only if LLHOA and Lordon meet this burden does the burden then shift to Atain to prove the applicability the policy exclusions. *Watts Indus. Inc., supra,* 121 Cal.App.4th at 1046. Here, Atain has established the absence of any potential for coverage by demonstrating that the claim cannot fall within coverage as a matter of law. *Montrose*, *supra*, 6 Cal.4th at 300.

### 2.     The Rules For Interpreting Insurance Policies

#### a.     *The policy must be given its plain meaning*

Like any other contract, insurance policies are given their plain meaning; all terms are read in their ordinary and popular sense in the context of the policy as a whole. *Bank of the West v. Super. Ct.*, 2 Cal.4th 1254, 1265 (1992). The court's "goal in construing insurance contracts, as with contracts generally, is to give effect to the parties' mutual intentions. . . . If contractual language is clear and explicit, it governs." *State of California v. Allstate Ins. Co.*, 45 Cal.4th 1008, 1018 (2009). The mutual intention of the parties at the time the policy was issued must be "inferred, if possible, solely from the terms of the policy." *Fire Ins. Exch. v. Super. Ct.*, 116 Cal.App.4th 446, 453 (2004).

#### b.     *The Court must first determine if the policy terms are ambiguous*

A court's "first task in interpreting an insurance policy" is to determine "whether the language of the policy, as it would be construed by a layperson, is ambiguous." *Baker v. Nat'l Interstate Ins. Co.*, 180 Cal.App.4th 1319, 1327 (2009); *AIU Ins. Co v. Super. Ct.*, 51 Cal.3d 807, 822 (1990). Legalistic or technical interpretations of policy terms cannot serve to undermine the "plain meaning" of the

words used. *E.M.M.I. Inc. v. Zurich Am. Ins. Co.*, 32 Cal.4th 465, 471 (2004). And, once the policy provisions in question have been judicially construed by an appellate court, there is no ambiguity as a matter of law, and the judicial construction is read into the policy. *Lockheed Corp. v. Continental Ins. Co.*, 134 Cal.App.4th 187, 197 (2005).

An insurance policy provision is ambiguous only "when it is capable of two or more constructions, both of which are reasonable." *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*, 5 Cal.4th 854, 867 (1993). A court "may not adopt a strained or absurd interpretation in order to find ambiguity where none would otherwise exist in the language itself." *Waller*, 11 Cal.4th at 18-19 (courts "will not strain to create an ambiguity where none exists"). Language in a contract "must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract." *Ibid.*

The "fact that the exclusion could have been written differently does not mean it is ambiguous." *Jon Davler, Inc. v. Arch Ins. Co.*, 229 Cal.App.4th 1025, 1039 (2014). "A court is without power, under the guise of construction, to depart from the plain meaning of words contained in a writing . . . and insert terms or limitations not found in the writing." *Rosen v. E.C. Losch, Inc.*, 234 Cal.App.2d 324, 330 (1965)

### c. *Only if the Court finds an ambiguity will the policy be interpreted to comport with the insured's reasonable expectations*

The last rule of policy interpretation is that only if the court finds that policy language has no plain meaning or is ambiguous, will that language then be interpreted in the sense that the insurer reasonably believed the insured understood it at the time the policy was issued (the "objectively reasonable expectations of the insured"). *St. Paul Mercury Ins. Co. v. Frontier Pacific Ins. Co.*, 111 Cal.App.4th 1234, 1244-1245 (2003) The disputed policy language "must be examined in the context of the intended function in the policy." *Baker*, 180 Cal.App.4th at 1328 citing

MOTION FOR SUMMARY JUDGMENT

20

Case No. 2:19-cv-09824 DSF (MRWx)

*Nissel v. Certain Underwriters at Lloyd's of London*, 62 Cal.App.4th 1103, 1111-12 (1998). This examination "requires a court to consider the policy as a whole, and the circumstances of the underlying case in which the claim arises, taken together with a dose of common sense." *Baker*, 180 Cal.App.4th at 1328; *Nissel*, 62 Cal.App.4th at 1111-12; *St. Paul*, 111 Cal.App.4th at 1245.

>    **3.    Applying These Rules, Atain Has No Duty To Defend Or Indemnify LLHOA Or Lordon, As A Matter Of law**
>
>    **a.    LLHOA's Breach of Contract is not a "wrongful act"**

Atain is required to defend and indemnify LLHOA and Lordon against "wrongful acts." The policy defines "wrongful acts" to mean "any actual or alleged negligent act, error or omissions…." California courts construing this language have held that the word "negligent" modifies—the words act, error and omission. *Oak Park*, 137 Cal.App.4th at 564-565, citing *Group Voyages, Inc. v. Emplrs. Ins. of Wausau*, No. C01-0400 SI, 2002 U.S. Dist. LEXIS 3674 (N. D. Cal., 2002), *aff'd* 66 Fed. Appx. 740, 741 (9th Cir. 2003). The failure to honor a contract is not fortuitous, nothing is unanticipated from the standpoint of the insured when it elects not honor its contractual obligations. *Oak Park,* 137 Cal.App.4th at 564. As the *Oak Park* Court held: "the contract that the insured entered into was voluntary…. The insured simply chose not to pay all the money due and owing [under the contract]…. That an insured would choose to violate a contract it voluntarily entered into is not a risk to be borne by an insurer." *Ibid*. See, also, *August Entertainment, Inc. v. Philadelphia Indemnity Ins. Co*., 146 Cal.App.4th 565, 575 (2007).

LLHOA deliberately elected to stop paying GPL as required by the Agreement and locked it out of the premises. LLHOA's decision to terminate its Agreement with GPL is neither a negligent nor fortuitous act. The claims asserted against LLHOA and Lordon, all of which arise out of its breach of the Agreement, do not fall within the scope of the policy's insuring agreement, as a matter of law. Atain has no obligation to defend or indemnify LLHOA or Lordon against these claims, as a

matter of law.

### b.     The Breach of Contract Exclusion removes all potential for coverage for the claims asserted by GPL and Lordon

Exclusion J precludes coverage for claims or actions seeking redress for breach of contract—written, oral or implied—regardless of whether that breach was negligent or intentional. Breach of contract exclusions bar coverage not only for breach of contract claims themselves, but also bar coverage of any other claims based on the same conduct as alleged to constitute the breach of contract. See, e.g., *James River Ins. Co. v. Medolac Labs*, 290 F.Supp.3d 956, 968 (C.D. California 2018); *Penn-Star Ins. Co. v. Caden Cos.*, No. 17-2369-AB (PLAx), 2017 U. S. Dist. LEXIS 213387, *15-16 (C.D. Cal. 2017). See also, *Medill v. Westport Ins. Corp.*, 143 Cal.App.4th 819, 829 (2006) (holding that insurer had no obligation to defend or indemnify insured under a D & O policy where policy excluded claims for breach of contract from the definition of loss) and *August Entertainment, Inc.*, 146 Cal.App.4th at 576 (noting that D & O policies typically exclude coverage for breach of contract claims).

All of the claims/causes of action asserted in the FAC are predicated on LLHOA's breach of its contract with GPL. Accordingly, Exclusion J, the breach of contract exclusion eliminates all potential for coverage for these claims, as a matter of law.

### c.     The Additional Insured Endorsement removes all potential for coverage for GPL's claims

The Additional Insured endorsement precludes coverage for claims brought by or on behalf of the property manager. This is an intra-insured exclusion. A similarly worded exclusion was upheld in *Montgomery v. Cal. Accountants Mut. Ins. Co.*, 61 Cal.App.4th 854 (1998). In that case, Cleaver and Beck asked Montgomery to become a partner in their accounting firm. She agreed. Her name was added to the firm, she was added to the letterhead as a partner. She was added as an insured to an

1    Accountants Professional Liability Insurance Policy issued by Cal. Accountants

2    Mutual.

3         The relationship went awry. Montgomery filed suit against her partners

4    individually and against the firm. The firm tendered defense its insurer. The policy

5    excluded coverage for "any claim … made … by any Insured or a present, former or

6    prospective employer, proprietor, partner, officer, employee or Related Individual of

7    any Insured." *Id*. at 857. The insurer declined to provide a defense to the

8    Montgomery lawsuit. *Ibid*.

9         Montgomery settled with Cleaver and Beck, took an assignment of their rights,

10   and sued their insurer. Montgomery claimed she was never legally a partner of the

11   firm, was not a prospective partner, but rather was an investor, hence the exclusion

12   did not apply. *Id*. at 857-858. She claimed she could not be a partner as her

13   accounting license had expired. *Id.* at 858.

14        The Court disagreed, holding that the undisputed evidence was that the firm

15   held Montgomery out to be a partner and that she was insured as a partner; the fact

16   that she was unlicensed did not impact the application of the exclusion. *Id*. at 860.

17   The Court also rejected Montgomery's argument that she was suing the firm as an

18   investor based on the inclusion of the term "multiple claim" in the exclusion. The

19   court held that the term "claim" is broadly defined to include any demand for money

20   or services, and that regardless of whether Montgomery sued as an investor or former

21   partner, the exclusion applied. *Ibid*.

22        The wording of the exclusion in the Additional Insured endorsement in the

23   Atain policy is similar to the exclusion at issue in *Montgomery*. The exclusion

24   broadly applies to any claims made by the property manager/management company,

25   its current and former employees or prospective employees. GPL was LLHOA's

26   property manager. The claims asserted against LLHOA and Lordon arise out of the

27   breach of the Agreement. The intra-insured exclusion in the Additional Insured

28   Endorsement removes all potential for coverage for GPL's claims against LLHOA

MOTION FOR SUMMARY                      23          Case No. 2:19-cv-09824 DSF (MRWx)
JUDGMENT

and Lordon, as a matter of law.

### D. **Atain Is Not Estopped To Deny Coverage**

An insurer does not waive or relinquish any coverage defenses it fails to assert at the time of its acceptance of a tender of defense, even when it does not make any express and full reservation of rights for a substantial period of time after the defense has been accepted. *Ringler Assoc. Inc.,* 80 Cal.App.4th at1189 (holding that insurer did not waive its right to assert coverage defense by waiting two years to reserve its rights after accepting the defense); and *Waller,*11 Cal.4th at 31-34 (failure to raise specific defenses for seven years not inconsistent with an intent to enforce the terms of the policy).

The question is whether Atain is estopped to deny coverage for the GPL Action. LLHOA has the burden of proving Atain is estopped to assert its coverage defenses. *Ringler*, 80 Cal.App.4th at 1190. To meet its burden of proving that Atain is estopped to deny coverage based on its failure to reserve rights LLHOA and Lordon must show (1) they had a reasonable belief that Atain would provide coverage *and* (2) they relied on that belief, to its detriment. *Ibid*. Both showings are essential to a claim of estoppel. *Ibid*.

Typically, "prejudice exists where the insured, in reliance on the insurer's defense under the policy, fails to retain an attorney, fails to negotiate a settlement, and fails to deal directly with the opposing party or counsel. *Ins. Co. of the W. v. Haralambos Beverage Co.,* 195 Cal.App.3d 1308, 1321 (1987). However, failure to retain separate counsel does not, by itself, show any detriment and, where there is no showing that separate counsel may have obtained a more favorable result or handled the matter differently, courts have found there to be no detrimental reliance. *State Farm Fire & Cas. Co. v. Jioras,* 24 Cal.App.4th 1619, 1624 (2004); *Hartford Fire Ins. Co. v. Spartan Realty Int'l.,* 196 Cal.App.3d 1320, 1226-27 (1987) (holding that refraining from hiring separate counsel does not manifest reliance where it was found that withdrawing already-hired counsel satisfies the reliance requirement).

Here, LLHOA and Lordon were immediately provided a full and complete defense by Atain. As per the terms of Policy No. NDSOO380, LLHOA, not Atain, controls settlement. Atain has participated in two mediations. The GPL Action has not settled. LLHOA and Lordon cannot show detrimental reliance.

**E.**     **Atain Is Entitled To Summary Judgment On LLHOA's And Lordon's Counterclaim**

Atain is entitled to rescind Policy No. NDS00380 due to the material misrepresentations and concealments made by LLHOA on the application. Alternatively, Policy No. NDS00380, by its terms and exclusions provides no coverage for the GPL Action and Atain has no duty to defend, indemnify or satisfy any judgment that may be entered in favor of GPL. For these reasons, LLHOA's and Lordon's Counterclaim for Declaratory Relief—Duty to Defend, fails as a matter of law. Atain is entitled to summary judgment dismissing LLHOA's and Lordon's Counterclaim in its entirety.

**IV.**     **CONCLUSION**

For the reasons set forth above, this Court should grant summary judgment in Atain's favor rescinding Policy No. NDS00380 and declaring that as the Policy is void *ab initio*, Atain has no duty to defend, indemnify or satisfy any judgment that may be entered in favor of GPL. Alternatively, this Court should grant summary in Atain's favor as based on the policy terms and exclusions it never had a duty to defend or indemnify LLHOA or Lordon against the lawsuit filed by GPL and it may withdraw from the defense of that lawsuit. Because in either instance, there is no potential for coverage for the claims asserted against LLHOA and Lordon in the GPL Action, this Court should also enter summary judgment in Atain's favor as to LLHOA's and Lordon's Counterclaim for Declaratory Relief on the duty to defend, in its entirety.

/ / /

/ / /

MOTION FOR SUMMARY
JUDGMENT

Case No. 2:19-cv-09824 DSF (MRWx)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Dated: October 19, 2020          MOKRI VANIS & JONES, LLP

                                 /s/ *GailAnn Y. Stargardter*
                                 GailAnn Y. Stargardter
                                 Attorneys for Plaintiff ATAIN SPECIALTY
                                 INSURANCE COMPANY

4820-1258-9007, v. 1